GRIFFIS, J.,
for the Court.
¶ 1. BancorpSouth sued Tool Mart, Inc., and O’Neal Wood for breach of contract. The circuit court granted BancorpSouth summary judgment, awarding it $8,850 plus interest. On appeal, Tool Mart and Wood argue that there was a genuine issue of material fact. On cross-appeal, Ban-corpSouth claims that it should have been awarded attorney fees. We affirm in part and reverse and remand in part.
FACTS
¶2. On February 19, 1998, Tool Mart entered a Credit Card Merchant Agreement with BancorpSouth, then known as Bank of Mississippi. In the agreement, BancorpSouth agreed to electronically process credit card payments made by customers to Tool Mart, and Tool Mart agreed to pay for this service and to accept all Visa cards. The agreement stated in part:
Merchant [Tool Mart] agrees that any ... telephone order ... is processed at Merchant’s risk, and Merchant is not guaranteed payment from Bank to Merchant. ...
On demand, Merchant will pay the Bank the amount paid ... for, and will indemnify Bank against all ... claims ... whatsoever arising in connection with “Unqualified Sales Slips.” “Unqualified Sales Slips” are any ... Transactions ... in connection with which (i) any term or condition of this Agreement has not been complied with; [or] (ii) there is any dispute or defense (whether or not valid) between Merchant and Cardholder.... Merchant agrees that Bank may charge any Unqualified Sales Slips back to Merchant....
Bank will make provisional payment of the total amount of the transactions electronically processed with the expressed understanding that the Bank reserves all rights of chargeback and recourse ... for failure to comply with the terms and provisions of this agreement. ...
Bank is ... authorized to debit Merchant’s Account from time to time in payment for Bank’s services to Merchant pursuant to this Agreement. Such debits shall include ... charge-backs ... that may be imposed from time to time by ... VISA....
Bank may charge Merchant with all or part of the amount of any sales draft previously paid by the Bank if (a) cardholder makes any claim or disputes the transaction ... (c) merchandise ... has *489 been returned ...(f) Bank determines the transaction is one in which it does not wish to participate; and (g) Merchant fails to comply with any of the terms of this Agreement.
Merchant agrees to indemnify ... Bank ... from any ... claims by any cardholder or third party arising in connection with sale of merchandise, ... and furthermore, agrees to indemnify ... Bank ... from any losses that may arise from a claim ... on the part of the cardholder....
Merchant understands that it must pursue directly with the owner and/or authorized user of an account, any claim ... Merchant may have in connection with sales draft which is in dispute or which has been charged back ... with the Bank incurring no liability thereunder ....
In the event the Bank takes action to enforce this Agreement, Merchant agrees to pay ... reasonable attorney fees ... incurred by the Bank....
Wood, the owner of Tool Mart, signed the Credit Card Merchant Agreement as guarantor in his individual capacity.
¶ 3. The agreement also provided that “Merchant will ... observe and comply with all the applicable Rules and Regulations promulgated by ... VISA....” Visa’s rules and regulations do not allow a merchant to have a no-refund policy unless the Merchant “delivers the purchased goods ... to the Cardholder at the time of Transaction.” All of Tool Mart’s sales were by phone, so the goods were not delivered until after the time of the credit card transaction.
¶4. On March 3, 1999, Tool Mart sold generators to Frank Tropepe. Tropepe paid Tool Mart with his Bank of America Visa card. Eight days later, Tool Mart sold more generators to Tropepe. This time, Tropepe paid with his Citibank Visa card. Tropepe complained that some of the generators were defective, so he wanted a refund. Tool Mart accepted return of thirteen of these generators but refused to give a refund.
¶ 5. Tropepe obtained the refund from his two Visa card companies. On January 23, 2000, Bank of America charged back the $5,000 refund to BancorpSouth. On April 14, Citibank charged back $3,850 to BancorpSouth. BancorpSouth requested reimbursement from Tool Mart, but Tool Mart refused based on its no-refund policy.
STANDARD OF REVIEW
¶ 6. This Court employs a de novo standard of review of a lower court’s grant or denial of summary judgment and examines all the evidentiary matters before it — admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. McMillan v. Rodriguez, 823 So.2d 1173, 1176-77(¶ 9) (Miss.2002) (citations omitted). The evidence must be viewed in the light most favorable to the party against whom the motion has been made. Id. at 1177(¶ 9). If, in this view, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his or her favor. Id. Issues of fact sufficient to require reversal of a summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite. Id.
ANALYSIS

I. Was there a genuine issue of material fact as to whether Tool Mart owed BancorpSouth $8,850?

¶7. Tool Mart and Wood argue that the existence of Tool Mart’s no-refund policy creates a genuine issue of material fact as to whether they should reimburse BancorpSouth for the chargebacks. They argue that the grant of a summary judgment allows BancorpSouth to change the *490 way Tool Mart does business. Bancorp-South argues that whether or not Tool Mart has such a policy is not material, because it is not a valid defense to the contract. We agree. We also find Tool Mart agreed to change, its no-refund policy with regard to any credit card sales, by signing the agreement with BancorpSouth.
¶ 8. Tool Mart and Wood admit that the Credit Card Merchant Agreement is valid. The agreement clearly stated that, (1) Tool Mart assumes all risks of telephone sales transactions, (2) Tool Mart cannot have a no-refund policy vis-a-vis telephone credit card sales, (3) Tool Mart agreed to indemnify the bank from any dispute, whether valid or not, between Tool Mart and a customer, and to take up that dispute directly with the customer, (4) Tool Mart agreed to reimburse the bank for charge-backs from Visa, (5) Tool Mart agreed to reimburse the bank where the merchandise was returned, and (6) Wood guaranteed Tool Mart’s compliance.
¶ 9. There is no dispute that the charge-backs were a result of telephone sales, paid for by Visa cards. There is no dispute that the chargebacks were the result of a dispute between customer Tropepe and Tool Mart as to whether the generators were defective. Tool Mart and Wood do not dispute that Tropepe’s two Visa card companies refunded $8,850 to him as a result of this dispute, and the companies in turn charged this amount back to Ban-corpSouth. Tool Mart and Wood admit that the generators were returned to Tool Mart. Wood stipulates that he is Tool Mart’s guarantor for any debts owed under the contract.
¶ 10. Given this, BancorpSouth was entitled to a judgment as a matter of law that Tool Mart and/or Wood must reimburse BancorpSouth $8,850. Whether or not Tool Mart had a no-refund policy is not a material issue, because Tool Mart agreed to allow refunds for telephone credit card sales. Tool Mart cannot complain that the bank is changing the way Tool Mart does business, because Tool Mart agreed to this change. Accordingly, we affirm the summary judgment. Tool Mart and Wood, jointly and severally, owe BancorpSouth $8,850 plus interest.

II. Was there a genuine issue of material fact as to whether Tool Mart owed BancorpSouth attorney fees?

¶ 11. BancorpSouth points out that Tool Mart and Wood did not dispute the fact that the contract called for Tool Mart to reimburse the bank for attorney fees. Tool Mart and Wood argue that BancorpSouth did not raise this issue in its summary judgment motion, and therefore, it was waived. We disagree.
¶ 12. The record clearly evinces that BancorpSouth asked for summary judgment to include an award of attorney fees under the contract, both in its original motion and in its reply motion. Tool Mart and Wood acknowledged this in their response, where they stated, “[t]he Plaintiff alleges that it is entitled to a judgment as a matter of law against both Defendants in the amount of $8,850, plus interest and attorney fees. ...” The issue was clearly before the trial court.
¶ 13. The Credit Card Merchant Agreement stated, “[i]n the event the Bank takes action to enforce this Agreement, Merchant agrees to pay ... reasonable attorney fees ... incurred by the Bank.... ” Tool Mart and Wood admit that the contract is valid. It is undisputed that the bank sued Tool Mart and Wood in order to enforce the contract. As set out above, BancorpSouth was so entitled to enforcement.
¶ 14. BancorpSouth is therefore entitled to judgment as a matter of law that it be reimbursed for reasonable attorney fees associated with bringing this action. We reverse the lower court on this issue and *491 remand the case for a determination of attorney fees.
¶ 15. THE JUDGMENT OF THE CIRCUIT COURT OF TISHOMINGO COUNTY IS HEREBY AFFIRMED ON DIRECT APPEAL AND REVERSED AND REMANDED ON CROSS-APPEAL. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS/CROSS-APPELLEES.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, ISHEE AND ROBERTS, JJ„ CONCUR. BARNES, J., NOT PARTICIPATING.